AARON B. WEINER, Plaintiff, *v.* EXCHANGE NATIONAL BANK OF CHICAGO, Trustee, *et al.*, Defendants.—(HOWARD ZUKER, Defendant and Third-Party Plaintiff-Appellant and Cross-Appellee, *v.* LEON GUTMAN, Third-Party Defendant-Appellee and Cross-Appellant.)

First District (4th Division)    No. 79-1640

Opinion filed August 21, 1980.

Mandel, Lipton & Stevenson, Ltd., of Chicago (Richard L. Mandel and Joseph M. Cotugno, of counsel), for appellant.

George B. Collins, of Collins & Amos, of Chicago, for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

Howard Zuker, the third-party plaintiff, received a judgment in the amount of $3,992.46 against Leon Gutman, the third-party defendant, after a bench trial in a contract action in the circuit court of Cook County. Zuker appeals from that judgment, alleging that he was entitled to a judgment in excess of $19,000. Gutman cross-appeals, arguing that he has no liability to Zuker.

The original plaintiff, Aaron B. Weiner,[1] sold a building to Zuker. As part of the sale, Zuker gave a purchase money second mortgage of $100,295.07 securing a note to Weiner which provided that Zuker "promises to pay (or cause to be paid) the first $25,000 of the aforesaid principal sum *and all interest on said principal sum* until said first $25,000 is paid, after which Howard Zuker shall have no liability hereunder." (Emphasis added.) After reducing his personal liability on the $25,000 to $16,692.46, Zuker sold the building to Gutman.

There were two contracts between Zuker and Gutman which, in part, provided for Gutman's personal liability on the second mortgage. The descriptions of Gutman's personal liability in the Zuker-Gutman contracts are different from the description of Zuker's personal liability in the Weiner-Zuker agreement.

The dispute between Zuker and Gutman on this appeal centers around the payment of interest. The wording of the Weiner-Zuker agreement provides, as stated above, that Zuker was personally liable for all interest on the "principal sum" until the first $25,000 of the principal was paid. Paragraph 3bF of the first Zuker-Gutman agreement, dated April 15, 1970, states in part:

"The acceptance of the title to the real estate by [Gutman is] subject to a mortgage of record * * * and subject to a second mort-

---

[1]During the pendency of this cause Weiner died and his executors were substituted as plaintiffs.

gage of record * * * securing a personal indebtedness (which the purchaser does agree to assume but in no event with greater personal liability than exists with present beneficiary, Howard Zuker) aggregating approximately $92,000 with interest at 6-½% a year * * *."

The second Zuker-Gutman agreement, date May 27, 1970, provided in part:

"LEON GUTMAN in accordance with the terms expressed in the contract for sale of real estate dated April 15, 1970, * * * as provided in Par. 3bF of said contract * * * does hereby agree to personally assume the payment of the balance of *that portion of the second mortgage which HOWARD ZUKER, * * * had originally, personally assumed to pay, presently amounting to- $16,692.46.*" (Emphasis added.)

Gutman made total payments of over $40,000 in principal and interest before defaulting on the second mortgage on March 1, 1976. In May of 1976, Gutman sold the building. The building was subsequently destroyed by fire and demolished.

Upon Gutman's default, Weiner sued Zuker on Zuker's personal guarantee. Weiner claimed Zuker still owed almost $10,000 on his $25,000 personal liability ($6,000 of which represented a disputed proration credit), plus interest on the full principal balance of approximately $79,000. That suit was settled for $16,000 before Zuker's complaint against Gutman was tried.

Zuker's complaint sought indemnity from Gutman for any monies which Zuker was found to owe Weiner. Following a bench trial the court found Gutman was liable for the $3,992.46 difference between the $16,692.46 specified in the agreement dated May 27, 1970, and $12,700 of the over $40,000 paid by Gutman during his ownership. The $12,700 was clearly identified as principal in the amortization schedule. Both parties appeal from that order.

Zuker argues Gutman's personal liability is identical to his own personal liability to Weiner, including personal liability for the interest on the full principal balance until the $25,000 personal guarantee is paid. In other words, Zuker contends that Gutman owes him the $3,992.46 still owing on the $25,000 personal guarantee *plus* interest on the approximately $79,000 full principal balance which continues to accrue until the $3,992.46 is paid. In making this argument, Zuker contends the language in the two documents signed by Gutman in 1970 demonstrates the parties' intent that Gutman would be personally liable for interest on the entire principal to the same extent that Zuker was personally liable for interest on the entire principal.

Gutman testified at trial that when he acquired the property in 1970 he did not know that Zuker had a contract with Weiner involving "some

degree of personal liability." He learned Zuker had personal liability to Weiner when he signed the May 27, 1970, document which specified the amount of personal liability as $16,692.46. He did not see the documents to which Zuker and Weiner were parties.

■■ The intent of the parties must be determined from the language of the contract. (*Telegraph Savings & Loan Association v. Guaranty Bank & Trust Co.* (1978), 67 Ill. App. 3d 790, 385 N.E.2d 97.) The April 15, 1970, real estate contract says very little about Zuker or Gutman's personal liability. It does no more than establish the upper limit of the personal liability which Gutman was assuming, *i.e.*, "in no event with greater personal liability than exists with * * * Howard Zuker * * * ." The April 15 document does not specify the extent of Zuker's liability to Weiner; it merely states that the principal secured by the second mortgage is $92,000 with interest at 6½% a year. The May 27, 1970, agreement provides that it is made "in accordance with the terms expressed in the contract for sale of real estate dated April 15, 1970 * * * ." This reference to or incorporation of the earlier document does not aid our inquiry because, as discussed above, the April 15 document does not specify the extent of Zuker or Gutman's personal liability. The May 27 document goes on to provide that Gutman agrees to personally assume "the payment of the balance of that portion of the second mortgage which * * * ZUKER * * * had orginally, personally assumed to pay, presently amounting to $16,692.46." We believe the trial court correctly found this last-quoted provision was unambiguous, even when read in the context of the entirety of the April 15 and May 27 documents, and demonstrates the parties' intent that the extent of Gutman's liability was limited to $16,692.46.

■■ Zuker argues Gutman's payment of both interest and principal during the years before his default is evidence of Gutman's belief that he was personally bound to pay interest on the entire principal balance until the $25,000 personal guarantee was satisfied. We do not agree with the inference Zuker draws from Gutman's payment of principal and interest. There appears to be little question that Gutman knew that he was required to pay both principal and interest, but this is not the same as knowledge that he was personally liable for both. In fact, Gutman introduced an amortization schedule showing the amounts of the monthly principal and interest payments for the term of the second mortgage. Obviously, Gutman had to make both principal and interest payments or be in default on the mortgage. Gutman's making of principal and interest payments does not support Zuker's contention that Gutman knew that he had to pay interest on the principal sum until the guaranteed portion of the mortgage was satisfied.

■■ Gutman argues on cross-appeal that the court erred in finding he still owed $3,992.46 because, he says, his personal liability was limited to $16,692.46 and he paid a total amount in excess of that figure. It follows

from what we stated above that we find no merit in this argument. Gutman knew he had to pay both principal and interest. It would be unreasonable to say that the entire amount of his payments during the first years had to be fully attributed to his personal liability on the principal and not to interest.

■■ Zuker also argues the trial court erred in denying his post-trial motion. In that motion Zuker attempted to introduce into evidence, for the first time, portions of Gutman's deposition. He does not contend he did not have the deposition available at the time of the trial. The trial denied the motion.

Zuker does not attempt to explain how the trial court allegedly erred in denying this motion. We believe the court acted properly. If evidence offered for the first time in a post-trial motion could have been produced at an earlier time it is not an abuse of discretion for the court to deny its introduction into evidence. *Exchange National Bank v. Heller* (1975), 26 Ill. App. 3d 675, 325 N.E.2d 328.

■■ On cross-appeal, Gutman also argues the trial court erred in refusing to give him credit for checks representing insurance proceeds which he tendered to Zuker and Weiner and they refused. As noted above, the record shows that the insurance proceeds resulted from a fire which occurred subsequent to Gutman's default on the mortgage and subsequent to the date on which Gutman sold the building to other parties. We thus cannot see how Gutman can contend he had any interest in these monies, and we believe the court acted properly in denying Gutman a credit for these checks.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

JOHNSON and ROMITI, JJ., concur.