RICKY BALSLEY, Plaintiff-Appellant, v. RAYMOND CORPORATION, Defendant-Appellee.

First District (5th Division)   No. 1—90—2775

Opinion filed July 24, 1992.—Rehearing denied August 26, 1992.—Modified opinion filed September 25, 1992.

Anesi, Ozmon & Rodin, Ltd., of Chicago (Stephen S. Phalen, of counsel), for appellant.

Wildman, Harrold, Allen & Dixon, of Chicago (Brian W. Bell, Ruth E. VanDemark, and Aaron T. Shepley, of counsel), for appellee.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Following a July 1980 accident in which his hand was crushed by the falling of a 60-pound protective battery cover on a Raymond Model 75 sideloader (a machine similar to a forklift), plaintiff Ricky Balsley filed a product liability action against the machine's manufacturer, the Raymond Corporation. A jury returned a verdict for the corporation and plaintiff now appeals this finding.

▮▮ Plaintiff first contends that defendant's expert was improperly allowed to testify regarding an alleged lack of other accidents involving the battery box lid on the Model 75 sideloader. Plaintiff alleges that this testimony was improper because the subject matter of defendant's expert's opinion was not disclosed prior to trial in accordance with Supreme Court Rule 220(d) (107 Ill. 2d R. 220(d)), which requires the disclosure of the subject matters of an expert's testimony. (See *Stringham v. United Parcel Service, Inc.* (1989), 181 Ill. App. 3d 312, 536 N.E.2d 1292.) We do not address the substance of this argument, as such objection, which was made in the motion *in limine*, was not preserved in the post-trial motion and has been effectively waived for purposes of appeal. Although plaintiff argues that his second memorandum in support of his post-trial motion, which incorporates by reference the motion *in limine*, is sufficient to preserve the Rule 220 objection, such is not the case. Illinois case law requires specificity in post-trial motions in order to accomplish the following: to allow the trial judge to review his own decisions; to allow the reviewing court to determine whether the trial court has had an adequate opportunity to reassess the allegedly erroneous rulings; and to prevent litigants from stating general objections and then raising issues on appeal that the trial judge was never given an opportunity to consider. (*Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 415 N.E.2d 337.) In *Brown*, the Illinois Supreme Court held that plaintiff's post-trial motion was not sufficiently specific to preserve allegations of error in jury instructions when it merely listed the objectional instructions without apprising the court of the points and arguments relied upon. Similarly, in the case at bar, plaintiff's memorandum supporting his post-trial motion refers to the motion *in limine* but does not discuss the arguments and points contained therein. Thus, although the motion *in limine* does raise the Rule 220 argument, it also

raises the lack of foundation argument, and based upon *Brown*, a general reference to the motion would not be sufficient to apprise the trial judge of the arguments relied upon and therefore would not serve to preserve such arguments for review.

Plaintiff next maintains that defendant's expert's testimony regarding lack of prior accidents was improper as a sufficient foundation for such testimony was never laid. Existing case law firmly establishes the fact that evidence of an absence of prior accidents or incidents is admissible when the party offering the evidence establishes as foundation that the absence of other accidents occurred when the same product was used and that the product was used under conditions substantially similar to those in which the plaintiff used the product. *Schaffner v. Chicago & North Western Transportation Co.* (1989), 129 Ill. 2d 1, 541 N.E.2d 643; *Salvi v. Montgomery Ward & Co.* (1986), 140 Ill. App. 3d 896, 489 N.E.2d 394; *Leischner v. Deere & Co.* (1984), 127 Ill. App. 3d 175, 468 N.E.2d 182.

In *Salvi*, which involved a plaintiff's claim that a cross bolt safety on an air gun manufactured by the defendant was defective, the appellate court affirmed the trial court's determination that the defendants had provided a sufficient foundation regarding admission of evidence of lack of prior accidents. In evaluating the necessary foundational requirements and in reaching its conclusion that the 459,000 air guns with the cross bolt safety were used under substantially similar circumstances, the court noted that because the subject mechanism was a part of the gun itself, each and every owner of the gun necessarily used the cross bolt safety in a similar manner while operating the gun. Thus, it was appropriate for defendant to admit evidence of absence of prior accidents. Similarly in *Leischner*, which involved the safety of 64,000 snowmobiles, the appellate court found that the evidence established that a substantial number of the snowmobiles were used on similar terrains at similar speeds in a similar manner, and that, therefore, a proper foundation for lack of prior accident testimony had been established. However, a contrary conclusion as to the propriety of foundational requirements for lack of prior accident testimony was reached by the appellate court in *Connelly v. General Motors Corp.* (1989), 184 Ill. App. 3d 378, 540 N.E.2d 370. In this case, which involved allegedly defective automobile tires, the appellate court affirmed the trial court's refusal to admit evidence of the alleged lack of prior accidents as defendant failed to produce any evidence that the absence of these complaints occurred when others were using the tires under conditions substantially similar to those in which they were used by the plaintiff. (Among the variables which di-

minished substantial similarity in the use of the tires were: (1) weight of the load on the tires; (2) number of miles the tires had been used; (3) speed of the vehicle at the time of the accident; (4) terrain on which the vehicle was being used; and (5) the amount of air in the tires.) See also *Walker v. Trico Manufacturing Co.* (7th Cir. 1973), 487 F.2d 595 (which held in construing Illinois law that although the sufficiency of foundation evidence varies and must be determined from case to case, without evidence of similarity of the location of the limit switch in other machines (a safety device in the machine at issue), and without evidence as to the frequency of conditions of use of such other machines, Trico should not have been permitted to introduce its evidence of absence of prior accidents).

■ In the case at bar, prior to giving his testimony that plaintiff's accident was the only one of its kind involving the machine at issue, defendant's expert established that each Model 75 sideloader is equipped with an identical battery compartment cover; each sideloader must be electrically recharged after eight hours of use; and each sideloader is recharged by opening and closing the battery compartment cover in exactly the same manner. If the facts ended here, we could analogize the foundational requirements to those in *Salvi* (involving the safety of air guns with built-in mechanism), *Leischner* (the safety of identical snowmobiles) or *Schaffner* (the safety of Schwinn bicycles with quick release mechanisms but without positive retention devices). Unlike the products in the aforementioned cases, which contained no variables and were thus used in substantially the same manner, the Model 75 sideloader (whose battery lid had been designed to stay open without propping) nevertheless required an adaptation to be made by each user during the battery recharging process. Because recharging had to be accomplished with the battery lid open, and because the lid would not stay open on its own accord, the user had to prop it open. Defendant's expert presented no evidence to establish that all battery lids in all Raymond Model 75 sideloaders were propped open the same way. Plaintiff in the instant action propped the battery lid open with a two-by-four. Defendant's expert testified that in the course of his inspection of 100 sideloaders, he had observed one sideloader which had incorporated a safety latch to keep the open lid in place. He further testified that, if modifications were made to the battery lids, users were required by OSHA (Occupational Safety and Health Administration) to get prior approval from the Raymond Corporation and to date the Raymond Corporation had not had notice of any such modifications. Nevertheless, this information still does not account for how the battery lids of the remainder of

Model 75 sideloaders were kept open during the recharging process. Although the sideloader battery recharging process has only one variable (unlike the many variables in the tires involved in *Connelly*), we nevertheless find that the presence of this factor casts doubt upon the conclusion that the machines were used in a substantially similar manner. Therefore, the foundational requirements for the introduction of the lack of other accidents were not met. We acknowledge that a trial court's decision to admit or refuse evidence is a matter of discretion and its decision should be reversed on appeal only if the court abused its discretion. (*Connelly*, 184 Ill. App. 3d 378, 540 N.E.2d 370.) We nevertheless find that because of the variable involved in the propping of the battery lids, defendant's expert did not establish that similar equipment was used in a substantially similar manner and, therefore, did not lay a proper foundation for the introduction of his testimony regarding the lack of other accidents. Accordingly, such testimony was improperly admitted.

■ As further grounds for trial error, plaintiff maintains that the defense attorney improperly referred to the movements of plaintiff's hands in an effort to introduce evidence of plaintiff's fault into a product liability lawsuit.[1] Defendant argues that his remarks in this regard were relevant to the issues of whether there was a defect and proximate cause. Alternatively, he postulates that plaintiff's objections were "too little, too late," or that any prejudice to plaintiff was cured by subsequent jury instructions. We disagree. Defendant's continued references during cross-examination to the placement and movement of plaintiff's hands went well beyond what was necessary to establish either a lack of defect or lack of proximate cause. Finally, after objection, the court instructed the defense attorney as follows: "You can certainly describe to the jury how it happened without asking him did he attempt to support. That does suggest that maybe he did something improper ***. I'm going to ask you to rephrase the question." These remarks did not deter defense counsel from again referring to plaintiff's conduct in his closing argument in which he stated: "You will recall Mr. Balsley on the witness stand talking about what he was doing. The movement of his hand, the human factor, was essentially

---

[1]Although misuse, assumption of the risk, and comparative negligence are affirmative defenses which may be raised in a product liability lawsuit in Illinois (*Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E.2d 197), the trial court had already denied defendant's motion for leave to file an affirmative defense regarding assumption of the risk, and no motion regarding misuse or comparative negligence was ever made.

rearward and laterally. Rearward and laterally." After objection, the court declared, "Movement is not an issue. However the plaintiff moved is not an issue in this case."

We find that defendant's improper and repeated referrals to plaintiff's conduct were adequately preserved by plaintiff's timely objections. The continuing nature of these remarks is particularly egregious considering defendant's futile attempt to introduce the affirmative defense of assumption of the risk. Under the circumstances, we cannot say that such innuendos of plaintiff's negligence were adequately cured by jury instruction. For the above-mentioned reasons we reverse and remand for a new trial.

Reversed and remanded.

MURRAY and GORDON, JJ., concur.